**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 |
| Chan Suk Kim, ) | |
| ) | CASE NO. 21-52662-LRC |
| Debtor. ) | |
| -------------------------------------------- | |
| ) | |
| Priority Payment Systems, LLC, ) | |
| ) | ADVERSARY PROCEEDING |
| Plaintiff, ) | CASE NO. _____ |
| ) | |
| v. ) | |
| ) | |
| Chan Suk Kim, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT TO DETERMINE DEBT NON-DISCHARGEABLE AND**
**DENIAL OF DISCHARGE**

**COMES NOW**, Plaintiff, Priority Payment Systems, LLC, ("PPS" or "Plaintiff") and files this complaint (this "Complaint"), pursuant to 11 U.S.C. §§ 523 and 727, against the Chapter 7 debtor, Chan Suk Kim ("Kim" or "Defendant"). In support thereof, Plaintiff respectfully states as follows:

**JURISDICTION AND PARTIES**

1.

This Court has jurisdiction over this adversary proceeding pursuant (the "Adversary Proceeding") to 28 U.S.C. §§ 157 and 1334, as well as 11 U.S.C. §§ 523.

2.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), & (J).

3.

This Court has jurisdiction over Defendant who is the debtor in the underlying bankruptcy case (the "Bankruptcy Case") before this Court.

4.

PPS is a creditor of Defendant's in the Bankruptcy Case with the authority to raise, appear, and be heard on the issues presented in this Adversary Proceeding pursuant to, inter alia, 11 U.S.C. §§ 523(c) and Fed. R. Bankr. P. 4007.

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) and the order granting automatic reference of such cases and proceedings to this Court.

6.

Defendant may be served with a copy of this Complaint at Defendant's address of record at 6257 Clapham Lane, Johns Creek, Georgia 30097.

## PRIOR LITIGATION

7.

On August 11, 2020, PPS filed a complaint in the Superior Court of Fulton County, Georgia, against Defendant (the "Superior Complaint").

8.

The Superior Court case was stayed during the discovery period due to the filing of the Bankruptcy Case.

## FACTUAL BACKGROUND

9.

Since 2014, Defendant was an independent contractor who located merchants that need credit card processing services and referred them to PPS for those services. PPS paid the Defendant a portion of the fees charged to the referred merchants for those services, referred to as "residual revenue" or simply "residuals".

10.

Defendant entered into a processing agreement, a loan agreement, promissory notes, and two residual purchase agreements with PPS. The Processing Agreement specifies the residuals to be paid to the Defendant. The processing agreement and the residual purchase agreements prohibit Defendant from soliciting any merchants away from PPS or encouraging any PPS merchants to terminate or breach its agreement with PPS.

11.

On or about June 2, 2014, Defendant executed and submitted an Agreement for Processing Services to PPS ("Processing Agreement").

12.

On November 1, 2014, Defendant entered into a Loan Agreement with PPS, which includes a Security Agreement. The Loan Agreement memorialized a multi-draw loan from PPS to Defendant of up to Two Hundred Thousand Dollars ($200,000.00), which was to be used exclusively to grow the business for PPS, and which was to be repaid per the terms of the Promissory Note.

13.

Defendant has subsequently entered into a series of amendments to the Promissory Note. The most recent amendment, which replaces the prior Promissory Note and amendments: (i) is dated September 10, 2019; (ii) in the principal amount of $714,637.20; (iii) requires Defendant to repay the loan amount in monthly installments on the 20th of each month; and (iv) matures in October 2020.

14.

Per the loan agreement and promissory notes, PPS loaned the Defendant a total of $2,932,500.00.

Case 21-52662-lrc    Doc 30    Filed 10/31/21    Entered 10/31/21 14:31:55    Desc Main
Document    Page 3 of 8

15.

As of July 20, 2020, the outstanding balance that Defendant owes PPS was $482,116.97, plus interest accruing on that amount at 12½% per annum.

16.

On July 20, 2018, Defendant entered into a Residual Purchase Agreement with PPS ("First Residual Purchase Agreement").

17.

Pursuant to the First Residual Purchase Agreement, PPS paid the Defendant One Million Eight Hundred Thousand Dollars ($1,800,000.00) in exchange for: (i) Forty-Five Thousand Dollars ($45,000.00) of residual payments per month generated by a portfolio of merchants identified in the First Residual Purchase Agreement ("Portfolio") for 32 months and, after 32 months, (ii) all rights, title and interests in a group of merchants from the Portfolio selected by PPS (the "First Sub-Portfolio").

18.

On May 1, 2019, Defendant entered into another Residual Purchase Agreement with PPS (Second Residual Purchase Agreement"). Pursuant to the Second Residual Purchase Agreement, PPS paid One Million Seven Hundred Ten Thousand Dollars ($1,710,000.00) to purchase (i) Forty-Five Thousand Dollars ($45,000.00) of residual payments per month generated by a portfolio of merchants identified in the First Residual Purchase Agreement ("Portfolio") for 30 months and, after 30 months, (ii) all rights, title and interests in a group of merchants from the Portfolio selected by PPS (the "Second Sub-Portfolio").

19.

Per the loan agreement and promissory notes, PPS loaned the Defendant a total of $2,932,500.00 which was to be paid back in monthly installments.

20.

Per the two residual purchase agreements, PPS paid the Defendant a total of $3,510,000.00.

21.

PPS entered into the aforementioned agreements and loan agreements with the Defendant based on misrepresentation by Defendant which Defendant knew PPS would rely. Defendant further breached its agreements with the Defendant by soliciting PPS's merchants and moving them to another processor after PPS made payments to the Defendant.

22.

Due to Defendant's breaches of the aforementioned agreements, Defendant owed PPS $564,328.24 as of July 20, 2020.

23.

Due to Defendant's breaches of the loan agreement and promissory notes, Defendant owed PPS $482,116.97 as of July 20, 2020.

24.

Defendant also owes PPS additional damages for the remaining terms of the residual purchase agreements and expected value of the residuals.

25.

On April 1, 2021, Defendant filed a Voluntary Petition for Individuals Filing for Bankruptcy (the "Petition"), seeking relief under chapter 7 of title 11 of the United States Code.

26.

In the Statement of Financial Affairs of the Petition, Defendant stated the total gross income received in calendar year 2019 is $40,000.00.

27.

On June 18, 2021, a Meeting of the Creditors pursuant to Bankruptcy Code Section 341 (the "341 MOC") was held. Defendant, Defendant's Bankruptcy Case counsel, Chapter 7 Trustee, and the undersigned counsel were present for the hearing.

28.

At the 341 MOC, Defendant testified to receiving funds from PPS and testifed that the funds received from PPS were deposited into a business account for Solim, LLC. Defendant testified that he did not have access to the bank accounts for Solim, LLC. Defendant further testified that he does not have a personal bank account.

29.

On August 31, 2021, PPS conducted a 2004 examination pursuant to Bankruptcy Rule 2004.

30.

Despite numerous requests, Defendant has still failed to provide documents requested pursuant to Bankruptcy Rule 2004.

## COUNT I

## DEFENDANT'S INDEBTEDNESS TO PPS FOR MONEY, PROPERTY, OR SERVICES WAS OBTAINED BY FALSE PRETENSES, A FALSE REPRESENTATION, OR ACTUAL FRAUD 11 U.S.C. § 523(a)(2)(A)

31.

PPS re-alleges and incorporates herein the allegations contained in paragraphs 1 through 30.

32.

Section 523(a)(2)(A) of the Bankruptcy Code provides:

> A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
> (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

33.

Defendant made intentional misrepresentations to PPS prior to and after the parties entered into the agreements. Defendant's fraud and misrepresentations proximately caused PPS to suffer economic injury and substantial monetary damages.

34.

Defendant's intentional false representations and his commission of actual fraud are the cause of his indebtedness to PPS.

35.

Similarly, Defendant's indebtedness to PPS is the result of Defendant's actual fraud. Defendant intentionally misrepresented facts to PPS reasonably relied in entering into contract and subsequently, providing substantial funds to the Defendant.  Defendant's actions were undertaken with the intent to benefit himself at the expense of PPS. As a result of Defendant's commission of actual fraud, the creation of false pretenses, and knowing misrepresentations are the cause of Defendant's indebtedness to PPS.

36.

The indebtedness owed to PPS is the result of Defendant's false pretenses, a false representation, or actual fraud.

37.

The indebtedness owed to PPS is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT II

### DEFENDANT'S INDEBTEDNESS TO PPS FOR MONEY, PROPERTY, OR SERVICES WAS OBTAINED BY USE OF A MATERIALLY FALSE WRITTEN STATEMENT MADE WITH DEFENDANT'S INTENT TO DECEIVE REGARDING THE FINANCIAL CONDITION OF AN INSIDER OF DEFENDANT ON WHICH PPS RELIED 11 U.S.C. § 523(a)(2)(B)

38.

PPS re-alleges and incorporates herein the allegations contained in paragraphs 1 through 37.

39.

Section 523(a)(2)(B) of the Bankruptcy Code provides:

A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(B)     use of a statement in writing—
(i)     that is materially false; (ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . .

40.

As consideration for the Residual Purchase Agreement, PPS received from the Defendant a list of merchants whom the Defendant would obtain substantial residuals from. Defendant provided the list of merchants knowing that he would later transfer such merchants and the residuals from the merchants to another merchant processor, and in fact, did transfer majority of the merchants.

41.

PPS relied on the anticipated revenue from list of merchants provided by the Defendant.  Defendant knowingly provided such false statement to cause PPS to enter into

agreements and loan contracts with the intent to deceive and thus causing PPS substantial damage. PPS would not have entered into contractual arrangements of any kind with Defendant and subsequently provide Defendant with substantial funding without the list of merchants with anticipated residuals. Defendant's knowing, materially false written statements of the list of merchants and the anticipated revenue generated by the merchants is the cause of his indebtedness to PPS.

42.

The indebtedness owed to PPS is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## COUNT III

### DEFENDANT'S INDEBTEDNESS IS FOR FRAUD WHILE ACTING IN A FIDUCIARY CAPACITY OR LARCENY 11 U.S.C. § 523(a)(4)

43.

PPS re-alleges and incorporates herein the allegations contained in paragraphs 1 through 42.

44.

Section 523(a)(4) of the Bankruptcy Code provides:

A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

45.

Defendant acted fraudulently in his dealings with PPS. Such fraudulent activity induced PPS into entering multiple agreements and promissory notes with the Defendant that they otherwise would not have.

46.

Defendant's actions to fraudulently induce PPS to enter into contracts with Defendant so as to obtain the large sums of money from PPS were taken in a fiduciary capacity.

47.

Consequently, the indebtedness owed to PPS is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT IV

### DEFENDANT'S INDEBTEDNESS TO PPS STEMS FROM DEFENDANT'S WILLFUL AND MALICIOUS INJURY TO PPS OR TO PPS' PROPERTY 11 U.S.C. § 523(a)(6)

48.

PPS re-alleges and incorporates herein the allegations contained in paragraphs 1 through 47.

49.

Section 523(a)(6) of the Bankruptcy Code provides:

A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

50.

Defendant willfully misrepresented material facts upon which he knew PPS would rely in determining whether to enter into contracts with and subsequently provide funds to the Defendant, knowing he had no intention of fulfilling his obligations under the respective contracts. Defendant's actions were intended to cause willful and malicious injury to PPS.

51.

The indebtedness owed to PPS is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## COUNT V

**DEFENDANT SHOULD NOT BE ENTITLED TO A DISCHARGE PURSUANT TO 11 U.S.C. § 727.**

52.

PPS re-alleges and incorporates herein the allegations contained in paragraphs 1 through 51.

53.

Despite the fact that Debtor entered into the agreements with PPS individually, Debtor deposited the funds from PPS to a business account of Solim, LLC.

54.

Debtor testified at the 2004 Examination that he did not have an interest in Solim, LLC nor had access to the bank account where the PPS funds were deposited.

55.

According to the Solim, LLC bank statements obtained from the Debtor pursuant to Bankruptcy Rule 2004, Debtor signed multiple checks from Solim, LLC's account. Further, PPS funds are routinely transferred out to at least nine (9) separate bank accounts.

56.

Debtor has routinely given false statements under oath during the Section 341 Meeting of Creditors and the 2004 Examination.

57.

Debtor took personal funds and diverted to a business which he does not have an interest in and cannot account for where such personal funds were used.

**WHEREFORE,** PPS respectfully asks this Court to:
(a)     Under Count I, except from discharge the indebtedness owed to PPS pursuant to 11 U.S.C. § 523(a)(2)(A).

(b) Under Count II, except from discharge the indebtedness owed to PPS pursuant to 11 U.S.C. § 523(a)(2)(B).

(c) Under Count III, except from discharge the indebtedness owed to PPS pursuant to 11 U.S.C. § 523(a)(4).

(d) Under Count IV, except from discharge the indebtedness owed to PPS pursuant to 11 U.S.C. § 523(a)(6).

(e) Under Count V, deny Defendant a discharge in this Bankruptcy Case pursuant to 11 U.S.C. § 727.

(f) And, grant such other relief as this Court deems necessary and appropriate.

Respectfully submitted, this the 31st day of October, 2021.

**BLEVINS & HONG, P.C.**

\_/s/_____
Soo J. Hong
GA Bar No. 129608
Blevins & Hong, P.C.
191 Roswell Street
Marietta, GA 30060

**Stanley, Esrey & Buckley, LLP**

\_/s/_____
Greg Michell
GA Bar No. 504053
Stanley, Esrey & Buckley, LLP
Promenade, Suite 2400
1230 Peachtree Street, NE
Atlanta, GA 30309